IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD MCINTYRE,<br><br>  Plaintiff,<br><br>  v.<br><br>WARREN PUMPS LLC,<br><br>  Defendant. | No. C 06-06301 WHA<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this asbestos products-liability action, defendant Warren Pumps LLC moves for summary judgment under two theories. *First*, defendant asserts that as a military contractor, it cannot be held liable. *Second*, defendant argues that plaintiff has failed to make out a prima facie case because he has not produced evidence that he came into contact with defendant's products. Defendant has failed to show that there are no triable issues of fact remaining on either of the grounds it asserts for summary judgment. Accordingly, defendant's motion for summary judgment is **DENIED**.

## STATEMENT

Plaintiff Edward McIntyre is currently 61 years old and suffers from mesothelioma, a type of cancer associated with exposure to asbestos. He worked at Mare Island Naval Shipyard in Vallejo, California, beginning in December 1963, through his retirement in June 1995 (Donadio Decl. Exh. A 144:4–145:2). His job duties included construction and overhaul of

1 fast-attack nuclear submarines, including painting insulation and pumps.  Specifically, he
2 worked on the *USS Abraham Lincoln*, *USS Barb*, *USS Guardfish*, *USS Haddock*, *USS Patrick*
3 *Henry*, *USS Permit*, and *USS Seawolf* (*id.* at Exh. C).  According to plaintiff, the work of
4 overhauling Warren Pumps' products caused the disturbance and release of asbestos dust and
5 fibers into areas where McIntyre worked.  The fibers circulated throughout the ships,
6 contaminating all areas with asbestos dust and fibers (Cohen Decl. ¶¶ 18–29).

7 Defendant was a defense contractor who supplied pumps to the United States Navy both
8 directly and through contracts with the United States Maritime Commission.  These contracts
9 included supplying pumps for the propulsion systems of fast-attack nuclear submarines.
10 Defendant presents evidence from its expert, retired Rear Admiral Roger B. Horne, Jr., of the
11 United States Navy.  Horne declares that the products Warren Pumps provided to the Navy
12 were covered by military specifications and that the equipment was manufactured under the
13 Navy's close direction and supervision.  For products and components covered by the military
14 specifications, the Navy had final say over any engineering disputes and frequently dictated the
15 materials to be used in the components.  Plaintiff disagrees and presents the declaration of its
16 expert, Charles Ay, who declares that while most products ordered by the Navy are covered by
17 some military specification, some products do not reflect any judgment or decision by the
18 military as to design.  Furthermore, the pumps installed by defendant were no different than
19 those designated for civilian use (Ay Decl. ¶¶ 4–9).

20 Horne also declares that the Navy had greater knowledge than military contractors, such
21 as defendant, of the dangers associated with the use of asbestos.  The Navy had its own set of
22 training procedures and precautionary measures for dealing with asbestos (Nelson Decl. Exh. A
23 at ¶¶ 4–10, 12–13).  Plaintiff disagrees and presents its own expert, Dr. Richard Cohen, who
24 declares that sophisticated military contractors did not warn the Navy of the carcinogenic
25 properties of asbestos until the mid-1970s (Cohen Decl. ¶¶ 5–8).

26 Plaintiff originally filed an action against a number of defendants in California Superior
27 Court in early July 2006.  Warren Pumps was dismissed from that action, and plaintiff filed this
28 action in federal court.  Plaintiff has continued to litigate against the other defendants in state

2

court, and a trial was set to begin on April 9, 2007, in that action. As of this order, the trial in that action is still ongoing.

**ANALYSIS**

Summary judgment should be granted where the pleadings, discovery, and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004). Once the moving party has met its initial burden, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation omitted).

**1.    MILITARY CONTRACTOR DEFENSE.**

The Federal Tort Claims Act allows plaintiffs to recover damages against the United States for the negligent or wrongful acts of its employees within the scope of their employment to the extent that a private person would be liable. 28 U.S.C. 1346(b). This consent to suit does not apply to "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. 2680(a). "[T]he selection of the appropriate design for military equipment to be used by our Armed Forces is assuredly a discretionary function within the meaning of this provision." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 511 (1988). "Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id*. at 512. The military-contractor defense is an affirmative

3

defense, so here defendant has the burden of establishing it. *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997).

### A.     Reasonably Precise Specifications.

Showing government approval of reasonably precise specifications "requires more than a rubber stamp . . . . If the government contractor exercised actual discretion over the defective feature of the design, then the contractor will not escape liability via the government contractor defense . . . ." *Snell*, 107 F.3d at 748 (quoting *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir.), *cert. denied*, 493 U.S. 935, (1989)). Furthermore, "the fact that a company supplies goods to the military does not, in and of itself, immunize it from liability for the injuries caused by those goods. Where the goods ordered by the military are those readily available, in substantially similar form, to commercial users, the military contractor defense does not apply." *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 811 (9th Cir. 1992).

Defendant presents the declaration of its expert, retired Rear Admiral Horne, to show that defendant's products were made according to reasonably precise military specifications. To Horne's declaration, defendant attached a laundry list of military specifications. They did not, however, point to any one specification or part of a specification that covered defendant's products or required the use of asbestos insulation. Horne did declare that the pumps were required by the cited specifications, as well as other specifications, to contain asbestos.

Plaintiff argues that the asbestos insulation in question was no different from that used for civilian projects. The insulation used on the pumps was more like the Navy ordering a can of beans, so the argument goes, than commissioning an attack helicopter. Plaintiff presents the declaration of its expert, Charles Ay, who declares that all products ordered by the military have a corresponding military specification for requisition purposes. The specifications, however, were not necessarily created by the military. Precise details are sometimes left up to contractors and engineers, particularly in the selection of materials. Furthermore, Ay declared that there was no difference between the asbestos insulation used for Warren Pumps' Navy contracts and the asbestos insulation used for all other jobs (Ay Decl. ¶¶ 3–6). Plaintiff also points out that defendant did not point to any particular military specifications that required that the insulation

4

be made from asbestos. The specifications only required that the insulation perform up to certain standards, not that it be made of any particular material.

When the military specifies and approves a design, it "has thereby made a judgment, rightly or wrongly, that the design was safe." *Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp 587, 589–90 (N.D. Cal. 1993) (Patel, J.). Here, defendant has the burden of proof. Defendant has come forward with its expert evidence that military specifications existed for the products it provided. Defendant has also presented evidence that the specifications for the insulation were more demanding than those for a mere stock product ordered by the government. It has failed, however, to show that the Navy made a judgment in creating reasonably precise specifications that mandated the use of asbestos. In response, plaintiff has presented evidence that the military may have not exercised its discretion in the selection of asbestos for an insulation material. The insulation may have been something the Navy merely ordered. Viewing the facts in the light most favorable to the plaintiff, a reasonable jury could conclude the military did not require the use of asbestos and/or that the products were merely ordered off the shelf.

### B. Conformity With Specifications.

For this prong of the *Boyle* test, defendant must show that its products were produced in conformity with military specifications. Here, defendant again presents the declaration of retired Rear Admiral Horne who declares that defendant's products were made in strict compliance with the specifications. Plaintiff does not argue, nor does he present evidence, that Warren Pumps' products were not produced according to military specifications. Viewing the evidence in the light most favorable to the plaintiff, there remain no triable issues of fact as to this element of the *Boyle* defense.

### C. Warnings and Knowledge of Dangers.

Finally, defendant must show that it warned the United States of any dangers that were known to defendant, but not to the United States. "The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but

5

withholding it would produce no liability." *Boyle*, 487 U.S. at 512. In this action, defendant does not contend that it warned the Navy of any dangers associated with asbestos insulation. Instead, defendant presents evidence that the Navy already had knowledge of the dangers that was superior or equal to its own knowledge.

Again, defendant presents the declaration of its expert, who declares that for all the time that McIntyre was working at Mare Island, the Navy had its own protocols and procedures for handling asbestos. Defendant also presents documents from the Navy showing that the Navy had taken steps to try to contain asbestos fibers at times at least as early as 1957. Furthermore, defendant presents evidence that military specifications forbade it from placing warnings on its products. Even so, defendant contends, any warnings on its products about asbestos would never have been seen by workers like McIntyre as they never dealt directly with asbestos insulation.

In response, plaintiff argues that defendant has presented no evidence that the Navy knew that asbestos was a carcinogen and that asbestos caused mesothelioma. Specifically, plaintiff's medical expert, Dr. Richard Cohen, declares that the dangers of asbestos were known at least as early as 1952, and that in his experience, he had found no evidence that *any* asbestos-producing company had warned the Navy of the risk of mesothelioma until at least the 1970s. In his declaration, Dr. Cohen did not specifically identify any company that failed to warn the Navy.

Here, defendant has not shown that the Navy knew of the risks associated with asbestos. It has shown that the Navy recognized asbestos as a danger, but it has not shown that the Navy was aware of asbestos' role in causing mesothelioma, or that the Navy's knowledge of those risks were superior to defendant's own knowledge. Accordingly, there still remain triable issues of fact as to this issue, and summary judgment is not appropriate. Defendant's motion is **DENIED**.

    **2. PRIMA FACIE CASE OF EXPOSURE.**

Next, defendant moves for summary judgment on the theory that plaintiff has failed to establish a prima facie case of exposure from Warren Pumps' products. Plaintiff has the burden

of showing that there was a reasonable medical probability that exposure to defendant's products was a substantial factor in contributing to plaintiff's asbestos-related disease. "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 976–78 (Cal. 1997).

Defendant argues that plaintiff has not presented any evidence that he was ever exposed to its products. It points to the absence of any reference to Warren Pumps in the initial disclosures in McIntyre's case in state court and in McIntyre's deposition. In his deposition, plaintiff was asked to identify all asbestos-containing products that he encountered while working at Mare Island and the companies that produced them. He did not recall working around any Warren Pumps products. In his initial disclosures, McIntyre and his counsel were asked to identify any asbestos-containing products with which plaintiff came into contact during his work. Warren Pumps products were not among them.

Now, plaintiff presents evidence that he worked on ships where Warren Pumps products had been installed. He first presents documents from the National Archives referencing defendant's products on several of the ships where plaintiff worked (Donadio Decl. Exh. C). The documents are dated from the late 1950s to the early 1960s. Plaintiff next presents his deposition testimony that he worked painting pumps and valves on those ships at various times, including times close to when the ships were being overhauled (Donadio Decl. Exh. A at 746:11–747:24; 807:3–10).

Defendant contends that this evidence should not be considered because plaintiff is bound by his prior statements in his discovery responses and his deposition. The evidence McIntyre presents now, so defendant argues, contradicts his prior deposition testimony and his previous discovery responses. Defendant is correct that a party cannot create a triable issue of fact on summary judgment by a declaration contradicting his prior deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Here, however, the evidence presented by plaintiff is neither his own later declaration nor directly contradictory to his prior statements. Plaintiff's failure to recall working around defendant's products does not

constitute an explicit admission that he did not, in fact, work around defendant's products. Furthermore, the discovery responses were filed in August 2006, and since then discovery has proceeded in plaintiff's state court case. Plaintiff may have discovered the evidence he now presents after those responses were filed.

Finally, defendant argues that the original asbestos-containing insulation packed around the gaskets and pipes of defendant's pumps had to have been overhauled at least once between the time they were installed on the ships and when plaintiff worked on the ships. According to defendant, any asbestos insulation it provided with its pumps would have been torn out long before plaintiff worked on the ships. Defendant urges the Court to follow the logic in *Andrews v. Foster Wheeler LLC*, 138 Cal. App. 4th 96, 108–13 (Cal. Ct. App. 2006). That decision held that the plaintiffs had not met their burden of showing exposure to the defendant's products. There, the defendant showed that asbestos-containing products had been installed over twenty years before the plaintiffs were allegedly exposed to them. The ships had undergone extensive overhauls nearly fifteen years before plaintiffs were exposed, so all of the defendant's products had already been removed. The decision concluded that there was insufficient evidence to establish a reasonable medical probability that the defendant's products were a substantial factor in causing the plaintiffs' disease. Here, Warren Pumps' argument is not as foolproof as that in *Andrews*. Defendant has not specifically identified when plaintiff was on the ships vis-à-vis when the ships were overhauled. Instead, defendant merely states that this case is like *Andrews*, so the same result should follow. That is not sufficient.

Defendant also argues that the fiber drift and reentrainment theory advanced in plaintiff's expert declarations is not supported by scientific evidence. This order need not reach that issue because, even without relying on those declarations for the disputed points, defendant has not eliminated all triable issues of fact with regard to plaintiff's exposure to its products. In short, viewing the facts in the light most favorable to the plaintiff, as is required on summary judgment, a reasonable jury could still conclude that plaintiff was exposed to defendant's asbestos-containing products, and that defendant's products were a substantial factor in

plaintiff's developing mesothelioma. Defendant's motion for summary judgment on the grounds that plaintiff failed to make out a prima facie case for exposure is **DENIED**.

## CONCLUSION

For all of the above-stated reasons, defendant's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

Dated: April 30, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE